**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| STRYKER CORPORATION OF MICHIGAN d/b/a STRYKER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JEREMY BELL,<br><br>Defendant. | Miscellaneous Action No. ___________<br><br>Related to Case No. 25-2972, *Douglas Consultants, LLC v. Stryker Corporation of Michigan*, pending in the United States District Court for the Middle District of Florida |

**MEMORANDUM IN SUPPORT OF PLAINTIFF STRYKER CORPORATION OF MICHIGAN, D/B/A STRYKER CORPORATION'S MOTION TO ENFORCE SUBPOENA AND COMPEL PRODUCTION OF DOCUMENTS**

Stryker Corporation of Michigan d/b/a Stryker Corporation ("Stryker"), pursuant to Rule 45 of the Federal Rules of Civil Procedure, respectfully requests that this Court, as the district of compliance for the subpoena attached as **Exhibit 1** ("Subpoena"), compel Jeremy Bell ("Bell") to produce any and all responsive documents. The subpoena was issued by Stryker in *Douglas Consultants, LLC v. Stryker Corporation of Michigan d/b/a Stryker Corporation*, Civil Action No. 25-2972, which is pending in the United States District Court for the Middle District of Florida, and the documents requested from Bell are indisputably relevant to the claims and defenses in that proceeding. For the reasons stated herein, and particularly because Bell has not satisfied his burden to dispute relevance or prove any undue burden, this Court should enter an Order enforcing the Subpoena and compelling Bell's production of responsive documents within seven (7) days.

# I. BACKGROUND

## A. Underlying Florida Lawsuit.

On October 31, 2025, Douglas Consultants, LLC ("Douglas Consultants") filed a lawsuit against Stryker related to commission payments that were allegedly due to it.[1] At its core, this case is about a medical sales representative, Justin Davidson ("Davidson")(who was doing business as the sole member of Douglas Consultants), trying to re-write the terms of his company's contract to extract commission payments from Stryker that he never earned on sales that never closed.

In April 2024, Stryker acquired mfPHD, LLC ("mfPHD"), a medical device company for which Davidson worked as a sales contractor. Following the acquisition, Stryker decided to transition Davidson's sales territory to its own direct sales representative. Stryker thus caused mfPHD to terminate its Independent Sales Representative Agreement with Davidson's company. The termination letter assured Davidson that he would be paid all commissions *earned under the terms of that agreement*, which made commissions payable upon receipt of a purchase order and deposit (50% of the commission) and after delivery of the order (the other 50%). Davidson accepted the offer by countersigning the letter on May 7, 2024. Davidson closed only a small fraction of the potential sales that were in progress—and Stryker paid commissions for those sales.

Stryker filed its Answer and Affirmative Defenses on August 26, 2026. Stryker also filed a Counterclaim against Davidson and Douglas Consultants.[2] Part of Stryker's Counterclaim against Davidson relates to Davidson's receipt and misuse of confidential information. (*See* Ex. 3.) The discovery deadline in the Florida lawsuit is set for October 1, 2026.

[1] A copy of the operative Amended Complaint is attached hereto as **Exhibit 2**.

[2] A copy of Stryker's Answer, Affirmative Defenses, Counterclaims and Third Party Claims is attached hereto as **Exhibit 3**.

**B. Bell's Prior Lawsuit.**

Bell previously filed a lawsuit in the Northern District of Ohio against Stryker related to commission payments he claimed to be due following termination of his own contractor agreement. (*See* Case No. 5:24-cv-01552.[3]) Like Davidson, Bell also previously worked as an independent contractor for mfPHD. After Stryker's acquisition of mfPHD, Stryker decided to transition Bell's territory to its own direct sales representative, which caused mfPHD to terminate its Independent Sales Representative Agreement with Bell. Bell later filed suit to try to recover commission payments based on a customer letter of intent that did not materialize into a purchase order and deposit.

Stryker filed a Motion to Dismiss all of Bell's claims. (Dkt No. 13.[4]) Soon after briefing the Motion to Dismiss, Bell and Stryker resolved the matter, and the case was dismissed with prejudice on March 5, 2025. (Dkt No. 18.) As part of Bell's and Stryker's resolution, Bell agreed to keep certain information regarding his claims and resolution confidential.

**C. Current Bell Subpoena.**

During the course of litigating the Florida action, discovery has established that Davidson communicated with former mfPHD sales representatives—including Bell—concerning his contracts with mfPHD and Stryker, the transition process following the acquisition, his disputes with Stryker, this litigation, and related claims for commission payments. Davidson already conceded that he had responsive communications with Bell regarding these topics, and has produced at least one email record evidencing that these communications took place during the transition period. Stryker's counterclaims specifically allege that Davidson communicated with

[3] A copy of Bell's September 12, 2024 Complaint against Stryker is attached hereto as **Exhibit 4**.

[4] A copy of Stryker's Motion to Dismiss in Bell's prior case is attached hereto as **Exhibit 5**.

former contractors regarding these subjects, retained and used Stryker confidential information, and falsely claimed that no documents existed reflecting such communications. (*See* Ex. 3, Stryker's Counterclaims, ¶¶ 95, 102-105, 112, 126, 140-145.) . The requested communications between Davidson and Bell are therefore directly relevant to Stryker's affirmative defenses, counterclaims, and third party claims. Because Davidson contends that he does not possess any further records evidencing these responsive communications with Bell, Bell is a unique and potentially indispensable source of those records.

Douglas Consultants represented that it possesses no documents reflecting communications between Davidson and Bell. That representation is difficult to reconcile with the evidence already produced in discovery. Indeed, discovery has already revealed at least one email communication between Davidson and Bell concerning matters relevant to this dispute. In addition, Davidson admitted that he communicated with Bell regarding his contracts, his claims, and the transition process. Given the admitted communications and the existence of at least one responsive email, there is every reason to believe additional responsive communications may exist, including emails, text messages, call records, or other electronically stored information.

Subsequent developments further underscore the need for third-party discovery. During recent discovery proceedings, Douglas Consultants disclosed that Davidson still possesses the device he used during the relevant period, yet continues to maintain that no responsive records of communications with Bell are in his possession. Stryker has also identified evidence demonstrating that Davidson conducted work-related communications through text messaging during the relevant timeframe, despite prior discovery responses claiming otherwise. These circumstances only heighten the need to determine whether records of the admitted communications between Davidson and Bell remain available from Bell's files, devices, or accounts.

Because Douglas Consultants claims to no longer possess records of communications between Davidson and Bell, Stryker had no choice but to issue a Subpoena to Bell. Stryker's Subpoena was narrowly tailored and asked for only two categories of documents: (1) documents evidencing communications between Bell and Davidson relating to Stryker, Bell's prior lawsuit, and/or Davidson's lawsuit; and (2) documents evidencing communications between Bell and Davidson's representatives, including Davidson's attorneys, relating to mfPHD, Stryker, Bell's prior lawsuit, and/or Davidson's lawsuit. (*See* Ex. 1.)

Stryker served Bell with the Subpoena on September 3, 2026.[5] On September 10, 2026, counsel for Bell, Joseph Simms (the same counsel he had in his prior lawsuit against Stryker), sent an email to counsel for Stryker setting forth certain "objections" to the Subpoena.[6] Bell offered the following general "objections" to producing the requested communications: "The subpoena commands Mr. Bell to spend his time and money searching for records spanning almost 2 ½ years when there appears to be little or no relevancy to your lawsuit of the information being sought." (*See* Ex. 6.) Bell's attorney also "cautioned" counsel for Stryker to "tread carefully if [the Subpoena] is an attempt to try to build a case against [Bell]" related to breaches of his Confidentiality Agreement. (*Id.*) Bell has not agreed to conduct a search for responsive documents or produce any responsive materials, instead maintaining objections based principally on relevance and burden. Bell has not served any formal response to Stryker's Subpoena, and none of the stated "objections" in Mr. Simms' email come close to rebutting the broad relevancy standard set forth in Rule 26 and Rule 45. Nor has Bell demonstrated how the production of communications with

---

[5] A copy of the Affidavit of Service is attached hereto as **Exhibit 6**.

[6] A copy of the email exchange between Bell's counsel and Stryker's counsel is attached hereto as **Exhibit 7**.

one other person over a limited period of time regarding a narrow subject matter could possibly constitute an undue burden. (*See* Ex. 6.)

Counsel for Stryker attempted to confer with counsel for Bell regarding the Subpoena, but Bell continues to stand on his (unfounded) objections. Given that there is now less than one week remaining for fact discovery in the Florida action, Stryker has no choice but to seek court intervention.

## II. ARGUMENT

### A. Legal Standard.

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas to third parties. The "scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). "Relevance for discovery purposes is extremely broad." *Barrio Bros., LLC v. Revolucion, LLC*, 2021 WL 282549, at *3 (N.D. Ohio Jan. 28, 2021) (quoting *Trimbur v. Norfolk Southern Corp.*, No. 2:13-cv-0160, 2015 WL 235219, at *2 (S.D. Ohio Jan. 16, 2015)). The term "relevant" has been "broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Once a third-party serves objections, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Rule 45(d)(2)(B)(i). On a motion to compel discovery, the movant "bears the initial burden of proving that the information sought is relevant." *Barnes v. Midland Credit Mgmt.*, 2020 WL 6778013, at *3 (N.D. Ohio Nov. 17, 2020) (quoting *Burris v. Dodds*, 2019 WL 6251340, at *2 (S.D. Ohio Nov. 22, 2019)). If movant makes this showing, "then the burden shifts to the non-movant to show that



4921-0324-5009 v.2

to produce the information would be unduly burdensome" or to otherwise establish why they should be permitted to resist production. *Prado v. Thomas*, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)).

### B. <u>Stryker's Subpoena Requests Documents That Are Relevant, And Bell Has Not Demonstrated Any Undue Burden.</u>

Stryker's Subpoena to Bell is indisputably relevant to the underlying lawsuit pending in the Middle District of Florida. As alleged in Stryker's Counterclaim against Douglas Consultants and Davidson, Stryker has reason to believe that Davidson communicated with other mfPHD independent contractors regarding confidential matters. (*See* Ex. 3, ¶¶ 102–105.) These confidential matters relate to Davidson's and Bell's transition deals and their demands for additional commission payments, beyond those vested and documented with Purchase Orders and deposits. (*Id.*) Evidence of communications between Davidson and Bell will either prove or disprove these claims by Stryker. Under the "broadly construed" scope of discovery, these communications should be deemed relevant, as they bear on facts that are directly at issue in the underlying Florida lawsuit. *Barrio Bros.*, 2021 WL 282549, at *3. Other than claiming in a conclusory fashion via email that the Subpoena has "little or no relevancy" (Ex. 6), Bell has not articulated with specificity how or why the information sought is irrelevant or improper.

Notably, Bell does not dispute that communications between Bell and Davidson occurred. Nor can there be any serious dispute that responsive documents exist or existed, as discovery in the Florida action has already revealed at least one communication between Bell and Davidson concerning relevant subject matter. The subpoena merely seeks the remaining communications relating to those same topics. Rather, Bell's objection is that the requested communications are purportedly irrelevant or burdensome to locate. But the existence of communications between Bell and Davidson regarding the subject matter of the Florida action only reinforces the relevance of

the subpoena. Whether those communications support Stryker's claims, undermine them, or are ultimately neutral is beside the point. Rule 26 permits discovery of information that bears on, or reasonably could bear on, issues in the case, and the requested communications plainly satisfy that standard.

Nor has Bell satisfied his burden under Rule 45 "to show that to produce the information would be unduly burdensome." *See Prado*, 2017 WL 5151377, at *1. Bell claimed via email that the Subpoena "commands [him] to spend his time and money searching for records spanning almost 2 ½ years." (Ex. 6.) But Stryker's requests are reasonable and narrowly tailored to avoid any undue burden. Stryker has asked Bell to produce written communications between himself and one other person regarding specific topics over a limited time period. It should not take Bell more than a few minutes to search his phone and email for any relevant communications with Davidson. Bell has offered no evidence regarding the burden associated with locating potentially responsive communications, such as the number of devices, accounts, custodians, or minutes/hours required to conduct the search. Instead, Bell relies only on conclusory assertions that the subpoena requires him to spend time and money searching for records. Such generalized assertions are insufficient to establish undue burden under Rule 45. Bell has not articulated why collection and production would be time-consuming or burdensome.

Bell further argued by email that he should not be required to search for communications that "do[] not exist." (Ex. 6.) That objection is speculative. Discovery has already revealed at least one responsive communication between Bell and Davidson. Moreover, Davidson admitted that communications occurred concerning subjects directly implicated by the subpoena. Under these circumstances, Bell cannot avoid a search based on the unsupported assumption that no additional responsive records exist. If, after a reasonable and diligent search, Bell determines that he does

not possess any responsive communications, then he can respond to the Subpoena accordingly. The mere possibility that he might not find any responsive documents is not a valid reason for Bell to object to the Subpoena.

Additionally, Bell's argument that the records sought could be obtained "from a party to the lawsuit" (Ex. 6), lacks merit. Douglas Consultants produced a single responsive email exchange between Davidson and Bell while representing that it possessed no additional documents reflecting communications between them. Given Davidson's admission that communications occurred regarding subjects directly implicated by the subpoena, Bell is a potentially unique source of additional responsive emails, text messages, call records, and other electronically stored information. Accordingly, the subpoena is both reasonable and necessary.

Bell further argues that Stryker should seek the requested information exclusively from Davidson, or seek spoliation sanctions as an alternative to Bell conducting any search (Ex. 7 at 1). Rule 45 imposes no such exhaustion requirement. Regardless, Stryker repeatedly sought this information from Douglas Consultants throughout discovery. Douglas Consultants ultimately represented that it possessed no documents reflecting Davidson's communications with Bell, thereby leaving Bell as a potentially unique source of responsive information. Under these circumstances, subpoenaing Bell was both reasonable and necessary.

Because the records are relevant, and Bell has not satisfied his burden of demonstrating any undue burden, he must respond to the Subpoena and produce any responsive documents in his possession.

### C. <u>Stryker Tried to Meet and Confer.</u>

As previously noted, counsel for Stryker attempted to resolve this dispute without court intervention. Unfortunately, counsel for Bell refused to provide any meaningful response. After

Bell's email responses on September 10 and September 14, 2026, Stryker requested a telephonic conference to discuss the issues in greater detail. Counsel for Stryker and Bell met telephonically on September 21, 2026. During this conference, Stryker explained the reasoning for its request, including why the requested documents were relevant to the underlying suit. Unfortunately, this conference did not prove fruitful, and Bell is still refusing to conduct any diligent search of his documents.

Between September 10 and September 23, counsel exchanged multiple emails concerning the subpoena and participated in a telephonic conference on September 21, 2026. (See Ex. 7.) During those discussions, Stryker explained the relevance of the requested communications, clarified the recent discovery developments that prompted the subpoena, and addressed Bell's burden objections. Bell nevertheless maintained his refusal to even conduct a search for responsive materials, leaving judicial intervention as Stryker's only remaining option.

Counsel for Stryker informed Bell's counsel that Stryker intended to file this Motion. A copy of this Motion was sent to counsel for Bell prior to filing.

## III. CONCLUSION

Based on Bell's complete failure to produce any documents responsive to the Subpoena, Stryker respectfully requests that the Court enter an order enforcing the Subpoena and compelling Bell to produce all responsive documents within seven (7) days.

Dated: September 29, 2026

Respectfully submitted,

*/s/ Rachel N. Byrnes*

Rachel N. Byrnes (0097736)
NELSON MULLINS RILEY & SCARBOROUGH
1100 Superior Avenue, Suite 2000
Cleveland, Ohio 44114
216.304.6181

rachel.byrnes@nelsonmullins.com

***Attorney for Plaintiff Stryker Corporation of Michigan d/b/a Stryker Corporation***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2026, a copy of the foregoing Motion to Enforce Subpoena and Compel Production of Documents was filed electronically. A copy of this filing was delivered by email to counsel for Defendant Jeremy Bell, who has already communicated with counsel for Stryker regarding this matter. Notice of this filing will also be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Rachel N. Byrnes*
Rachel N. Byrnes (0097736)